UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X
DEMARK DIXON,

                    Petitioner,

                                        MEMORANDUM AND ORDER
          -against-                     14-CV-1223(JS)


UNITED STATES OF AMERICA,

                    Respondent.
------------------------------------X
APPEARANCES
For Petitioner:     DeMark Dixon, pro se
                    1315 Amsterdam Avenue
                    Apt. 1-H
                    New York, NY 10027

For Respondent:     Peter W. Baldwin, Esq.
                    United States Attorney's Office
                    Eastern District of New York
                    271 Cadman Plaza East
                    Brooklyn, NY 11201


SEYBERT, District Judge:

          DeMark Dixon ("Petitioner") petitions this Court pro se

for a writ of error coram nobis pursuant to the All Writs Act,

28 U.S.C. § 1651(a).  For the following reasons, the Petition is

DENIED in its entirety.

                          BACKGROUND

          On February 19, 1998, Petitioner entered a guilty plea

in the United States District Court of the Eastern District to

Count One of a filed Superseding Indictment.  (Plea Tr.[1] 12:12-

---

[1] Plea transcript can be found at Docket Entry 1-1, Ex. B,
at 4-22.

17:19.)  As originally filed, Count One included the charge of Racketeering in violation of 18 U.S.C. § 1962(c) for engaging in the following criminal acts: (1) the robbery of Chase Bank on October 10, 1996; (2) the robbery of the Christmas Tree Shop on December 7, 1996; (3) the robbery of the Palace Garage on December 23, 1996; (4) the robbery of North Fork Bank on March 6, 1997; (5) the robbery of the Key Bank on March 14, 1997; and (6) the conspiracy to rob Mt. Sinai Hospital during the winters of 1996 and 1997.  (See Dixon v. United States, No. 01-CV-4591, Docket Entry 114, at 3.)  Petitioner entered a guilty plea exclusively to Acts Two and Three of Count One and executed a written plea agreement in which he waived his right to appeal.  (Plea Tr. 12:12-16:1; 17:15-17:18.)

Prior to the Court accepting Petitioner's plea, the Court asked a series of standard plea allocution questions.  The Court informed Petitioner of the trial rights he was foregoing by entering his guilty plea, and Petitioner responded that he understood.  (Plea Tr. 3:6-4:1.)  The Court stated that pursuant to his plea Petitioner was facing a maximum term of twenty-years of imprisonment, but his anticipated sentence was between 140 and 175 months of imprisonment.  (Plea Tr. 4:2-5:8.)  Additionally, the Court ensured that Petitioner understood the nature of his appeal waiver, confirming that he agreed to waive his right to appeal, a habeas corpus proceeding, or any action contesting his

2

guilt if he was sentenced to a term of 140 to 175 months.  (Plea

Tr. 5:23-6:3.)  Further, the Petitioner engaged in a factual

allocution, during which he explained his conduct as to

Racketeering Act 2 under Count 1 of the Superseding Indictment, in

pertinent part:

> The Court: Mr. Dixon, what, if anything, did
> you do with respect to the charges contained
> in racketeering act 2 under Count 1?
> The Defendant: I drove to Connecticut to a
> Christmas tree store shop and I waited
> outside, when they went inside to rob the
> place.
> The Court: And when was this?
> The Defendant: December 7, 1996.
> The Court: And did you know that these other
> individuals were going to rob the tree shop?
> The Defendant: Yes.

(Plea Tr. 12:24-13:9.)  Petitioner continued and explained his

role in Racketeering Act 3 under Count 1 of the Superseding

Indictment:

> The Court: With respect to racketeering act
> 3, what, if anything, did you do between
> October 1, 1996 and December 23, 1996?
> The Defendant: I knew about the garage, that
> it was going to get robbed.
> The Court: What garage was that?
> The Defendant: The Palace garage.
> The Court: And that was located in
> Manhattan?
> The Defendant: Yes.
> The Court: And what, if anything, did you do
> with respect to planning that particular
> crime?
> The Defendant: I sat in the van, I drove the
> van downtown and sat inside.
> The Court: And waiting for these individuals
> to go in and rob persons in the Palace
> garage?

> The Defendant: Yes.
> The Court: Or take items that were involved in commerce?
> Mr. King: They were automobiles, Your Honor.
> The Court: Well, let me hear it from Mr. Dixon.
> The Defendant: Yes. Yes, I knew they were going to take cars.

(Plea Tr. 14:2-14:23.)  The Court confirmed that Petitioner's plea

was a choice he was making of his own free will:

> The Court: Do you have any questions regarding the contents of this agreement or your plea here today?
> The Defendant: Yes, I understand it.
> The Court: All right.  Has anyone forced you to enter into this plea?
> The Defendant: That's the only way I will keep my health.  I can't get a fair trial with the government.
> The Court: Well, you have a right to go to trial, sir.
> The Defendant: I'm going to lose.
> The Court: Well, I can't make up your mind.
> The Defendant: I understand that.
> The Court: You're pleading guilty here under oath, what you said is sufficient to make out a conviction under these charges.
> The Defendant: Yes, Your Honor.
> The Court: If you don't want to plead guilty, you go to trial.  I'm ready to try this case March 2nd.  Your attorney Mr. Gribetz is extremely experienced, he's put a lot of time into this case from what I can tell.
> The Defendant: I know he did.
> The Court: And if you want a trial you have a trial.  Now, I'm asking you one last time, is it your desire to plead guilty to these charges?
> The Defendant: Yes.
> The Court: You now enter a plea of guilty with respect to Count 1, racketeering acts 2 and 3; is that right, Mr. Dixon?
> The Defendant: Yes.

4

The Court: Your plea is accepted.

(Plea Tr. 16:14-17:19.)  Shortly after his guilty plea, Petitioner
made a motion to withdraw the plea; following oral arguments, the
motion was denied.  (See Case No. 97-CR-0543, Docket Entries 130,
144.)  On September 24, 1999, Petitioner was sentenced to a below
guidelines range of 120 months' imprisonment followed by three
years of supervised release.  (Resp't's Answer, Docket Entry 14,
at 5.)

Petitioner appealed his conviction and the Court's
denial of his motion to withdraw his plea to the Second Circuit
Court of Appeals.  See United States v. Truesdale, No. 99-1587,
2000 WL 1051966, at *1-2 (2d Cir. July 27, 2000).  On July 27,
2000, the Second Circuit affirmed the Court's denial of his motion
to withdraw his guilty plea, stating that "the district court did
not clearly err in crediting appellant's allocution hearing
statements . . . Appellant's later self-serving statements
therefore do not satisfy his burden to raise a significant question
about the voluntariness of his plea."  Id. at *1 (internal
quotation marks and citations omitted).  The Second Circuit upheld
Petitioner's conviction stating, "Appellant recounted his
involvement in two robberies and testified that he had participated
in the planning of those crimes and undertook other action in
furtherance of that plan.  On this record, we cannot say that the

district court erred in finding that appellant understood the nature of the charges to which he was pleading." Id. at *2.

Subsequently Petitioner filed a petition to vacate his sentence pursuant to 28 U.S.C. § 2255 and on June 9, 2004, the Court denied the Section 2255 petition. See Dixon v. United States, No. 01-CV-4591, Mem. & Order, Docket Entry 114.

Following his release, Petitioner's supervised release terminated on December 9, 2013. (Pet., Docket Entry 1, at 2.)[2]

On February 21, 2014, Petitioner filed the instant Petition for a writ of error coram nobis, arguing that (1) he received ineffective assistance of counsel "before, during, and after the plea allocution"; (2) his guilty plea was incomplete; and (3) he is innocent of the charge he plead guilty to. (Pet. at 2.) Additionally, Petitioner filed a motion requesting the case be heard by a jury, which was denied on October 2, 2014. (See Oct. 2014 Order, Docket Entry 19, at 2.) Further, on October 2, 2014 the Court permitted Petitioner to supplement the coram nobis petition to add facts to his actual innocence claim. On April 12, 2017, Petitioner filed an additional writ of error coram nobis, raising identical arguments. (Suppl. Pet., Docket Entry 24.)[3]

---

[2] Page numbers for the Petition and its accompanying exhibits are those generated by the Electronic Case Filing System.

[3] Page numbers for the Supplemental Petition are those generated by the Electronic Case Filing System.

For the following reasons, the writ of <u>coram</u> <u>nobis</u> is DENIED in its entirety.

DISCUSSION

The Court will first address the applicable legal standard before turning to the merits of the Petition.

I. <u>Legal Standard</u>

A writ of error <u>coram</u> <u>nobis</u> is an "extraordinary remedy" authorized by the All Writs Act, 28 U.S.C. § 1651.  <u>Coram</u> <u>Nobis</u> relief is "essentially a remedy of last resort for petitioners who are no longer in custody pursuant to a criminal conviction and therefore cannot pursue direct review or collateral relief by means of a writ of habeas corpus."  <u>Fleming v. United States</u>, 146 F.3d 88, 89-90 (2d Cir. 1998) (<u>per</u> <u>curiam</u>).  Further, "'the All Writs Act is a residual source of authority to issue writs that are not otherwise covered by statute.  Where a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling.'"  <u>Carlisle v. United States</u>, 517 U.S. 416, 429, 116 S. Ct. 1460, 1468, 134 L. Ed. 2d 613 (1996) (quoting <u>Penn. Bureau of Corr. v. U.S. Marshals Serv.</u>, 474 U.S. 34, 43, 106 S. Ct. 355, 361, 88 L. Ed. 2d 189 (1985)).  As such, the writ of <u>coram</u> <u>nobis</u> "is not a substitute for appeal, and relief under the writ is strictly limited to cases in which errors of the most fundamental character have rendered the proceeding itself irregular and invalid."  <u>Foont v. United States</u>,

93 F.3d 76, 78 (2d Cir. 1996) (internal quotation marks and citation omitted).

When seeking coram nobis relief, the petitioner bears the burden of demonstrating that "(1) there are circumstances compelling such action to achieve justice; (2) sound reasons exist for failure to seek appropriate earlier relief, and (3) the petitioner continues to suffer legal consequences from his conviction that may be remedied by grant of the writ." Foont, 93 F. 3d at 79 (internal quotation marks and citation omitted). The petitioner bears the burden of proof and "it is presumed [that] the [prior] proceedings were correct". United States v. Morgan, 346 U.S. 502, 512, 74 S. Ct. 247, 253, 98 L. Ed. 2d 248 (1954). In sum, "it is difficult to conceive of a situation in a federal criminal case [ ] where [a writ of error coram nobis] would be necessary or appropriate." Carlisle, 517 U.S. at 429, 116 S. Ct at 1468 (internal quotation marks and citation omitted; second alteration in original).

"It is undisputed that '[b]ecause a petition for writ of error coram nobis is a collateral attack on a criminal conviction, the time for filing a petition is not subject to a specific statute of limitations.'" Foont, 93 F.3d at 79 (quoting Telink, Inc. v. United States, 24 F.3d 42, 45 (9th Cir. 1994)). "A petition for a writ of error coram nobis, however, may still be time barred if the petitioner cannot provide a justified reason for failure to

seek appropriate relief at an earlier date." <u>Cruz v. People of N.Y.</u>, No. 03-CV-9815, 2004 WL 1516787, at *4 (S.D.N.Y. July 6, 2004). Thus, the Court considers timeliness on a case-by-case basis. <u>See</u> <u>Foont</u>, 93 F.3d at 81; <u>Cisse v. United States</u>, 330 F. Supp. 2d 336, 344 (S.D.N.Y. 2004).

Though a <u>coram</u> <u>nobis</u> petition is not a petition for habeas corpus relief, "'[b]ecause of the similarities between <u>coram</u> <u>nobis</u> proceedings and § 2255 proceedings, the § 2255 procedure often is applied by analogy in <u>coram</u> <u>nobis</u> cases.'" <u>Fleming</u>, 146 F.3d at 90 n.2 (quoting <u>Blanton v. United States</u>, 94 F.3d 227, 235 (6th Cir. 1996)).

As Petitioner's submissions were filed <u>pro</u> <u>se</u>, the Court will liberally construe them "'to raise the strongest arguments that they suggest.'" <u>Kirkland v. Cablevision Sys</u>., 760 F.3d 223, 224 (2d Cir. 2014) (quoting <u>Burgos v. Hopkins</u>, 14 F.3d 787, 790 (2d Cir. 1994)). However, this does not excuse Petitioner "'from compl[ying] with relevant rules of procedural and substantive law'". <u>Traguth v. Zuck</u>, 710 F.2d 90, 95 (2d Cir. 1983) (quoting <u>Birl v. Estelle</u>, 660 F.2d 592, 593 (5th Cir. 1981)).

## II. <u>Analysis</u>

As an initial matter, the Court considers whether Petitioner's waiver of his right to appeal bars this writ of error <u>coram</u> <u>nobis</u>. The Second Circuit has held that "knowing and voluntary waivers of a defendant's right to appeal a sentence

within an agreed Guidelines range are enforceable." United States v. Salcido-Contreras, 990 F.2d 51, 51 (2d Cir. 1993) (per curiam). However, "waivers of the right to appeal a sentence, like waivers of constitutional rights, are invalid unless they are voluntary and knowing." United States v. Monzon, 359 F.3d 110, 116 (2d Cir. 2004) (quoting United States v. Ready, 82 F.3d 551, 556 (2d Cir. 1996)). Therefore, "[w]here the record clearly demonstrates that the defendant's waiver of her right to appeal a sentence within an agreed Guidelines range was knowing and voluntary, that waiver is enforceable." Id., 359 F.3d at 116.

Here, Petitioner agreed in his plea agreement and during his allocution not to file any submissions challenging his conviction or sentence if he was sentenced to a term of imprisonment between 140 and 175 months, and Petitioner received a below Guidelines sentence of 120 months of imprisonment. (Plea Tr. 4:2-6:4; Resp't's Answer at 5.) Additionally, the Court ensured that Petitioner understood the contents of his plea agreement which he executed in open court. (Plea Tr. 5:15-8:8; 16:5-16:6.)

There is nothing in the record to suggest that the choice to enter the plea agreement was anything other than a voluntary and knowing decision made by Petitioner. As such, since "a knowing and voluntary waiver of the right to appeal is generally enforceable," the waiver is valid. United States v. Hernandez,

242 F.3d 110, 113 (2d Cir. 2001). However, as one of Petitioner's allegations concerns counsel's ineffective performance during the plea process, the Court proceeds to review the merits of the petition. See United States v. Djelevic, 161 F.3d 104, 107 (2d Cir. 1998) (per curiam) (stating that claims of ineffective assistance of counsel in entering the plea "might cast doubt on the validity of his waiver.") (citing United States v. Henderson, 72 F.3d 463, 465 (5th Cir. 1995)). As is set forth below, the Court finds that even if Petitioner had not waived his right to file the instant petition, Petitioner is not entitled to coram nobis relief.

    A.   Timeliness

       Guided by the Second Circuit, the timeliness of a coram nobis petition is "a threshold procedural hurdle to obtaining coram nobis relief." Dixon v. United States, No. 14-CV-0960, 2015 WL 851794, at *6 (S.D.N.Y. Feb. 27, 2015). An "unjustified delay" in filing a petition is "fatal to an application for coram nobis." Dorfmann v. United States, 13-CV-4999, 2014 WL 260583, at *6 (S.D.N.Y. Jan 23, 2014). Here, though Petitioner filed his writ of coram nobis fifteen years after his guilty plea, the filing was within one year from when his sentence was final upon the completion of his supervised release. For purposes of this writ of coram nobis, the Court will construe the Petition as timely.

B.   Fundamental Error

Next, the Court considers whether Petitioner has demonstrated that there are "circumstances compelling such action to achieve justice." Morgan, 346 U.S. at 511, 74 S. Ct. at 252. As stated above, Petitioner raises three grounds for coram nobis relief: (1) that he received ineffective assistance of counsel "before, during, and after his plea allocution"; (2) that his guilty plea was incomplete; and (3) that he is innocent of the charge he pled guilty to.  The Court addresses the claims in turn.

1.   Ineffective Assistance of Counsel

Construing the petition liberally, Petitioner argues that he received ineffective assistance of counsel "before, during and after the plea allocution" when his counsel forced him to enter a guilty plea by telling him that "the Court will get mad" if he did not, and in retaliation the Court would impose a longer sentence.  (Pet. at 2.)

It is well established that to prevail on an ineffective assistance of counsel claim, a petitioner must demonstrate that his counsel's performance was so inadequate that he was denied his Sixth Amendment right to counsel.  See Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984). A petitioner must "(1) demonstrate that his counsel's performance 'fell below an objective standard of reasonableness' in light of 'prevailing professional norms,' and (2) 'affirmatively prove

prejudice' arising from counsel's allegedly deficient representation." United States v. Cohen, 427 F.3d 164, 167 (2d Cir. 2005) (quoting Strickland, 466 U.S. 688, 693, 104 S. Ct. 2064, 2067). Under the first prong of the Strickland test, the Court "must indulge a strong presumption that the counsel's conduct falls within the wide range of reasonable professional assistance". Strickland, 466 U.S. at 689, 104 S. Ct. at 2065. Under the second prong of the Strickland test, a petitioner must establish that he was prejudiced by counsel's erred performance, meaning that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068.

When raising an ineffective assistance of counsel claim in the context of a guilty plea, "petitioner must show that the plea agreement was not knowing and voluntary, because the advice he received from counsel was not within acceptable standards." Parisi v. United States, 529 F.3d 134, 138 (2d Cir. 2008) (internal quotation marks and citations omitted). This analysis focuses on the plea agreement process, not on pre-plea occurrences. Id. It is clear that "[c]laims by petitioners that their pleas were involuntarily made due to the erroneous advice or unrealized promises made by counsel 'afford an all too easy avenue for the invalidating of conviction on pleas of guilty.'" Hernandez v. United States, 839 F. Supp. 140, 143 (E.D.N.Y. 1993) (quoting

United States v. Horton, 334 F.2d 153, 154 (2d Cir. 1964)).  Thus, "when considering the voluntariness of a defendant's plea, courts look to the voir dire of the defendant upon each plea to determine whether the pleas reflect a knowing, free and rational choice of the alternative open to the accused."  Id. (internal quotation marks and citation omitted).

Petitioner fails to point to anything in the record that supports his conclusory assertion that counsel was ineffective during the plea process.  See Pitcher v. United States, 371 F. Supp. 2d 246, 257 (E.D.N.Y. 2005).  Looking to the plea allocution, Petitioner indicated that he was satisfied by counsel's representation, informed the Court that he understood the constitutional rights he was giving up by pleading guilty, and stated that he understood the plea itself.  (Plea Tr. 2:24-16:16.)

Additionally, Petitioner fails to demonstrate that he was prejudiced in any way.  In the context of a guilty plea, to satisfy the second prong of the Strickland test, "a petitioner must demonstrate that there is a reasonable probability that 'a decision to reject the plea bargain would have been rational under the circumstances.'"  Whyte v. United States, Nos. 08-CR-1330, 14-CV-3598, 2015 WL 4660904, at *7 (S.D.N.Y. Aug. 6, 2015) (quoting Padilla v. Kentucky, 559 U.S. 356, 372, 130 S. Ct. 1473, 1485, 176 L. Ed. 2d 284 (2010).  A consideration in whether a petitioner was prejudiced in the plea context is whether there was an available

14

defense that petitioner indicates he would have pursued at trial.
See Kovacs v. United States, 744 F.3d 44, 52 (2d Cir. 2014).
Petitioner does not indicate that he would have insisted on
proceeding to trial or pursued a viable defense if not for his
attorney's alleged error.  As such, Petitioner's contention that
he received ineffective assistance of counsel is without merit.

   2.   Incomplete Guilty Plea

      Petitioner contends that he is entitled to coram nobis
relief because his guilty plea was incomplete and invalid.  The
well-established standard for considering the validity of a plea
is "whether the plea represents a voluntary and intelligent choice
among the alternative courses of action open to the defendant."
North Carolina v. Alford, 400 U.S. 25, 31, 91 S. Ct. 160, 164, 27
L. Ed. 2d 162 (1970).  In evaluating whether a guilty plea meets
this standard, "[w]hat is essential . . . is that the court
determine by some means that the defendant actually understands
that nature of the charges."  United States v. Maher, 108 F.3d
1513, 1521 (2d Cir. 1997).  When considering a petitioner's
statements made under oath during a plea allocution, "[s]olemn
declarations in open court carry a strong presumption of verity."
Blackledge v. Allison, 431 U.S. 63, 74, 97 S. Ct. 1621, 1629, 52
L. Ed. 2d 136 (1977).

      In light of these standards, the record shows that
Petitioner's guilty plea and appeal waiver were both knowing and

voluntary. Petitioner stated on the record that (1) he understood his plea, (2) he wished to plead to the charges, (3) he understood his waiver, and (4) he engaged in a detailed factual allocution. (Plea Tr. 5:23-8:7; 12:24-14:23; 16:14-17:19.) Additionally, both this Court and the Second Circuit previously held that Petitioner's guilty plea was knowing and voluntary. See Truesdale, 2000 WL 1051966, at *1-2; Dixon v. United States, No. 01-CV-4591, Docket Entry 114, at 3.

### 3. Actual Innocence

Petitioner argues that he is entitled to coram nobis relief because he is actually innocent of the charge he pled guilty to--specifically, Racketeering Acts Two and Three contained under Count One of the Superseding Indictment. (See Pet. at 2; Plea Tr. 17:15-17:18.) The petition states that there exists "sold alibi evidence that would have weaken[ed] the fabricated testimony of the Government witnesses testimony during any trial". (Pet. at 2.) This alleged alibi evidence consists of written statements from individuals stating that Petitioner was with them during the weekend of March 14, 1997. (See Pet., Ex. D, at 30-52.) In a subsequent filing, Petitioner argues that he is actually innocent because he doesn't match a description of the perpetrators. (Reply to Resp't's Answer, Docket Entry 15, at 3.) Petitioner attaches police paperwork from the investigation of the Palace Garage robbery that describes the perpetrators who entered the garage as

16

"short & chubby", and avers that he does not fit that description. (Reply to Resp't's Answer at 3, 27.)

For Petitioner to succeed on a claim of actual innocence, he must meet a high burden and show that "'in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" McQuiggin v. Perkins, 569 U.S. 383, 386, 133 S. Ct. 1924, 1928, 185 L. Ed. 2d 1019 (2013) (quoting Schlup v. Delo, 513 U.S. 298, 329, 115 S. Ct. 851, 868, 130 L. Ed. 2d 808 (1995)). An actual innocence claim "must be supported by 'new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial.'" Rivas v. Fischer, 687 F.3d 514, 541 (2d Cir 2012) (quoting Schlup 513 U.S. at 324, 115 S. Ct. at 851). In the context of guilty pleas, "'actual innocence' means factual innocence, not mere legal insufficiency." Fountain v. United States, 357 F.3d 250, 255 (2d Cir 2004) (quoting Bousley v. United States, 523 U.S. 614, 623, 118 S. Ct. 1604, 1611, 140 L. Ed. 2d 828 (1998)). A plea of guilty greatly undermines a claim of actual innocence. German v. Racette, No. 13-CV-1530, 2015 WL 7709606, at *6 (N.D.N.Y. Nov. 25, 2015); see also Jenkins v. United States, Nos. 11-CR-0633, 13-CV-0195, 2013 WL 6869649, at *3 (S.D.N.Y. Dec. 31, 2013) (stating that "[c]ourts are especially reluctant to overturn a conviction based on new evidence when the conviction stemmed from a guilty plea").

Petitioner's alleged new evidence does not support his claim of actual innocence. <u>First</u>, the written statements at best provide Petitioner an alibi for the dates March 14-16 of 1997. (<u>See</u> Pet., Ex. D, at 35-52.) As stated above, Petitioner pled guilty to two criminal events, the Christmas Tree Shop robbery on December 7, 1996 and the Palace Garage robbery on December 23, 1996. (Plea Tr. 12:24-14:20.)

<u>Second</u>, while the police paperwork related to the Palace Garage robbery, indicates that the perpetrators who entered the garage with weapons were "short & chubby", it also indicates that there were additional participants who remained outside the Palace Garage whose description is listed as "unknown". (<u>See</u> Reply to Resp't's Answer, Ex. B, at 27.) During Petitioner's factual allocution, he informed the Court that his role in the Palace Garage robbery was that "[he] drove the van downtown and sat inside." (Plea Tr. 14:13-14:14.) Because he never entered the garage, the description referred to by Petitioner is irrelevant.

In sum, Petitioner has not provided any evidence that supports his claim of innocence.

C.   <u>Continuing Legal Consequences</u>

Assuming, <u>arguendo</u>, that the Court found that the Petitioner demonstrated fundamental errors in the underlying proceedings, Petitioner has still failed to establish that he is

suffering continuing legal consequences as a result of his conviction.

To demonstrate continuing legal consequences, "a petitioner must at least point to 'a concrete threat that an erroneous conviction's lingering disabilities will cause serious harm . . . [i]t is not enough to raise purely speculative harms." Fleming, 146 F.3d at 91 (quoting United States v. Craig, 907 F.2d 653, 658 (7th Cir. 1990)) (alteration in original). The Second Circuit has emphasized that "[t]he requirement of continuing legal consequences would lose all force if speculative harms . . . were sufficient to state a claim for coram nobis relief." Id. When a petitioner's continuing legal consequences are related to an inability to obtain certain jobs, a petitioner must establish that "he could obtain such employment but for his conviction." Id. Further, a "desire to be rid of the stigma" of a criminal conviction is insufficient to establish that one is suffering from continuing legal consequences. See United States v. Nat'l Plastikwear Fashions, 368 F.2d 845, 846 (2d Cir. 1996) (per curiam).

Petitioner claims that he is unable to obtain "well benefit employment." He states that on November 15, 2011, "Halls Automotive" rescinded a job offer upon learning of this conviction and that on January 16, 2014, he was removed from an Access-A-Ride driver training course based on this conviction. Though Petitioner

has established challenges to maintaining specific instances of employment, he has not demonstrated that he faces "a legal impediment to returning to his profession." United States v. Foont, 901 F. Supp. 729, 734 (S.D.N.Y. 1995). Though the Court acknowledges Petitioner's difficulties, "the great majority of released felons face difficulty in convincing prospective employers to overlook their criminal records when making hiring decisions. This is clearly a collateral consequence of a conviction, but it is not legal consequence of the type specified by the Second Circuit as a prerequisite for eligibility for coram nobis relief." Id. at 734, n.2.

Of note, Petitioner states that he possesses multiple professional licenses including, inter alia: (1) a Commercial Class B Driver's License; (2) a Commercial Class A Permit; (3) a New York City tow truck license; (4) professional car detailer; (5) a fork lift license; (6) Homeland Security Clearance; (7) a Building custodian Certification; and (8) a Cleaning Chemical Certification and Green Certification. (Reply to Resp't's Answer at 5-6.) The Court assumes that these licenses would allow him to pursue alternative means of employment, and Petitioner has provided no explanation for not doing so. The Court notes that with regard to Petitioner's removal from the Access-A-Ride driver's course, the attached letter from the Department of Motor Vehicles indicates that his disqualification for participation can

be waived when "five years have expired since you were convicted or released from a sentence of imprisonment for this conviction" or if a "certificate of relief" is obtained by demonstrating specific pre-requisites. (See Pet., Ex. G., at 13.) Petitioner has failed to state whether he took actions to seek this certificate of relief. In sum, Petitioner cannot show that he is unable to return to his profession.

CONCLUSION

For the foregoing reasons, the Petition for a writ of error coram nobis pursuant to 28 U.S.C. § 1651 (Docket Entry 1) is DENIED and the Supplemental Petition is DENIED (Docket Entry 24). Because there can be no debate among reasonable jurists that Petitioner was not entitled to coram nobis relief, the Court does not issue a Certificate of Appealability. 28 U.S.C. § 2253(c); see also Middleton v. Att'ys Gen., 396 F.3d 207, 209 (2d Cir.2005).

The Clerk of the Court is directed to mail a copy of this Memorandum and Order to the pro se Petitioner and mark this matter CLOSED.

SO ORDERED.


/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.


Dated:      February   14  , 2018
            Central Islip, New York